UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

       -v.-                        :          S1 06 Cr. 442 (LAP)

SYED HASHMI,                      :
    a/k/a "Fahad,"
                                  :

        Defendant.          :

- - - - - - - - - - - - - - - - X


**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ADMIT CERTAIN
EVIDENCE AT TRIAL**


                                PREET BHARARA
                                United States Attorney
                                  for the Southern District of
                                  New York
                                Attorney for the United States
                                  of America


Brendan R. McGuire
Iris Lan
Assistant United States Attorneys

      - Of Counsel -

**Table of Contents**

Table of Contents . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . iii

Background . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   Charged Conduct Relevant to the Evidence at Issue . . . . 3

II.  Evidence of Hashmi's Involvement in ALM and
     Support for Jihad . . . . . . . . . . . . . . . . . . . 6

     A.   2002 ALM Protest . . . . . . . . . . . . . . . . 6

     B.   2003 ALM Meeting . . . . . . . . . . . . . . . . 6

Discussion . . . . . . . . . . . . . . . . . . . . . . . . 7

I.   The Evidence In Question Is Admissible as Direct
     Evidence of the Charged Offenses . . . . . . . . . . . 8

II.  Hashmi's Prior Participation in ALM Is Admissible as
     Background to the Charged Conspiracy . . . . . . . . . 9

     A.   Applicable Law . . . . . . . . . . . . . . . . . 10

     B.   Discussion . . . . . . . . . . . . . . . . . . . 11

III. Admission of Evidence of Hashmi's Speaking Roles at
     the 2002 ALM Protest and 2003 ALM Meeting Does Not
     Offend the First Amendment . . . . . . . . . . . . . . 13

IV.  The Proffered Evidence Is Also Admissible Under
     Federal Rule of Evidence 403 . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . 18

## Table of Authorities

Cases

*Dawson* v. *Delaware*, 503 U.S. 159 (1992) . . . . . . . . . . .  14

*United States* v. *Apker*, 705 F.2d 293 (8th Cir. 1983) . . . .  11

*United States* v. *Armone*, 363 F.2d 385 (2d Cir. 1966) . . . .  11

*United States* v. *Coonan*,
    938 F.2d 961 (2d Cir. 1991) . . . . . . . . . . . 10, 12

*United States* v. *Giese*, 597 F.2d 1170 (9th Cir. 1979) . . 11, 14

*United States* v. *Gelzer*, 50 F.3d 1133 (2d Cir. 1995) . . . 15-16

*United States* v. *Gonzales*, 110 F.3d 936 (2d Cir. 1997) . . . 10

*United States* v. *Inserra*, 34 F.3d 83 (2d Cir. 1994) . . . . . 10

*United States* v. *Jimenez*, 789 F.2d 167 (2d Cir. 1986) . . . . 15

*United States* v. *Livoti*, 196 F.3d 322 (2d Cir. 1999) . . . . 17

*United States* v. *Mercado*, 573 F.3d 138 (2d Cir. 2009) . . . . 12

*United States* v. *Rosa*, 11 F.3d 315 (2d Cir. 1993) . . . . . . 10

*United States* v. *Salameh*,
    152 F.3d 88 (2d Cir. 1998) . . . . . . . . 11, 13-15, 17-18

*United States* v. *Santoro,* 302 F.3d 76 (2d Cir. 2002) . . . . . 9

*United States* v. *Williams*, 205 F.3d 23 (2d Cir. 2000) . . . . 17

*Wisconsin* v. *Mitchell*, 508 U.S. 476 (1993) . . . . . . . . . 13


Rules

Federal Rules of Evidence 402 . . . . . . . . . . . . . . . . . 15

Federal Rules of Evidence 403 . . . . . . . . . . . . . . . . . 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

          -v.-                    :          S1 06 Cr. 442 (LAP)

SYED HASHMI,                      :
     a/k/a "Fahad,"
                                  :

               Defendant.         :
                                  :

- - - - - - - - - - - - - - - - X

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ADMIT
CERTAIN EVIDENCE AT TRIAL**

          The Government respectfully submits this memorandum of
law in support of its motion to admit certain evidence at trial.
As discussed more fully below, the Government intends to offer
evidence related to the defendant's participation in an Islamic
fundamentalist organization known as Al-Muhajiroun ("ALM"), whose
membership support, among other things, the violent terrorist
agenda of al Qaeda and similar jihadist organizations, and seek
the overthrow of Western society.  Specifically, the Government
intends to offer two pieces of evidence: (1) an excerpt of a
videotape, approximately five minutes in length, depicting the
defendant leading a June 2002 ALM protest in Manhattan (the "June
2002 Protest");[1] and (2) the testimony of a witness who attended

---

          [1]  Attached as Exhibit A is a copy of the video of the
protest in its entirety.  The Government intends to offer the
video through a witness who was hired to record the protest by a
private organization.  As noted, the Government does not plan to

1

a February 2003 ALM meeting at Queens College (the "2003 ALM Meeting"), which the defendant helped lead and where he spoke at length.

As discussed more fully below, the Government expects that the defense will place the defendant's knowledge and intent squarely at issue at trial.[2]  The questions of what the defendant knew about al Qaeda and whether he intended to support al Qaeda at the time of the charged conduct will be central to the jury's evaluation of the evidence.  Accordingly, the Government submits that the evidence described above, which demonstrates Hashmi's prominent role in ALM during the eighteen months prior to the charged conduct is admissible in this case for three reasons.  First, Hashmi's role in ALM, an international Islamic fundamentalist organization that has publicly supported Usama Bin Laden and al Qaeda, is probative of Hashmi's knowledge of the

_____

to offer the entire 45-minute video; rather, it seeks to offer only four relevant excerpts, totaling less than four minutes. The excerpts appear at the following time stamps: (i) 15:02-15:20 (Hashmi states, among other things, that "Bin Laden is not a terrorist"); (ii) 25:16-26:46 (Hashmi leads group chanting in support of various groups, including Hamas and Hezbollah, and shouting in support of "jihad"); (iii) 27:10-28:30 (Hashmi leads group chanting "death, death to the Crusaders," among other things); and (iv) 43:00-43:55 (Hashmi leads group chanting "death, death to the Crusaders," among other things).

   [2] This expectation is based in part on the defendant's pre-trial claim that the Government is prosecuting him based on his association with an extremist group.  *See* Defendant's Motion to Dismiss the Indictment at 22 ("By all appearances . . ., Mr. Hashmi is being prosecuted for his association with Al Muhajiroun").

existence of al Qaeda, its nature as a foreign terrorist organization, and its goals and methods of achieving those goals. Second, Hashmi's professed support for jihad during the 2002 ALM Protest and the 2003 ALM Meeting tends to show that Hashmi undertook the acts in question – permitting a cooperating witness ("CW") to store goods in his apartment and otherwise facilitating the CW's delivery of those goods to al Qaeda – knowing that those acts would further al Qaeda's goals.  Finally, Hashmi's active membership in ALM, the organization through which he met the CW, helps to explain the nature of the relationship between Hashmi and the CW and provides important background information to the charged conduct.

## Background

### I.   Charged Conduct Relevant to the Evidence at Issue

Hashmi is charged in four counts with conspiring to provide material support to al Qaeda, conspiring to make a contribution of goods or services to al Qaeda, and two substantive counts related to the two conspiracies.  The charges primarily relate to Hashmi's participation in a conspiracy to provide money and gear, including ponchos, waterproof pants and sleeping bags, to an al Qaeda military commander who was directing al Qaeda's insurgency against coalition forces in Afghanistan in 2004.

The core of the Government's proof at trial will include the testimony of the CW, who will describe how he became close friends with Hashmi through their membership in ALM in New York in 2000 and 2001.  The Government expects the CW to testify that, during this period, Hashmi and the CW regularly participated in meetings with ALM leadership in the United Kingdom and New York.  Hashmi and the CW also discussed their shared support of Usama Bin Laden and al Qaeda, and their mutual desire to fight jihad in the near future.  During this time period, according to the CW, he and Hashmi helped to organize more than 50 different ALM-sponsored events in the New York area, including public protests and speeches by ALM-members, as well as weekly meetings of ALM members, which were akin to the evidence of the 2002 ALM Protest and 2003 ALM Meeting that the Government seeks to admit.

In addition, the CW will testify that the CW stayed with Hashmi at Hashmi's apartment in London for two weeks in January 2004.  Upon his arrival, the CW told Hashmi that he had recently met in Pakistan with Abd al Hadi al Iraqi ("Hadi al Iraqi"), a high-ranking al Qaeda military leader.  The CW told Hashmi that he met with Hadi al Iraqi to confirm Hadi al Iraqi's prior receipt of clothing and gear that the CW had previously sent to him, and to provide Hadi al Iraqi with cash in support of al Qaeda's insurgency.  The CW also explained to Hashmi that the

4

primary purpose of his visit to the United Kingdom was to meet
with a group of al Qaeda supporters to resolve a dispute
regarding which supporters were actually providing money and gear
to Hadi al Iraqi in Pakistan.  According to the CW, some of the
al Qaeda supporters were former members or supporters of ALM.

During the CW's two-week stay with Hashmi, Hashmi
allowed the CW to use his cellphone to arrange a series of
meetings with the group of al Qaeda supporters.  Hashmi then
attended these meetings with the CW during which the dispute over
who was supporting Hadi al Iraqi was discussed and certain
participants expressed a desire to fight jihad for Hadi al Iraqi
and al Qaeda.  According to the CW, although Hashmi did not
actively participate in the meetings, he was present for their
entirety and discussed them with the CW afterward.

While the CW was in the United Kingdom, another co-
conspirator ("CC-1") gave the CW additional gear for Hadi al
Iraqi, specifically, waterproof pants and coats.  According to
the CW, after CC-1 dropped off the gear in two or three garbage
bags, the CW and Hashmi removed the gear from the bags, placed it
on Hashmi's bed, and inspected it.  Hashmi allowed the CW to
store this gear at Hashmi's apartment for the remainder of the
CW's stay.  The night before the CW's flight to Pakistan,
according to the CW, Hashmi helped the CW carry the gear out to

CC-1's car with the understanding that the CW and CC-1 planned to hand deliver the gear to Hadi al Iraqi.

The CW will also testify that, during this same visit, Hashmi loaned him approximately $300 worth of British pounds for the purchase of an airline ticket to Pakistan.  At the time, the CW told Hashmi that the CW intended to use the money for an airline ticket to Pakistan so that he could transport the gear to Hadi al Iraqi.

## II.  Evidence of Hashmi's Involvement in ALM and Support for Jihad

### A.  2002 ALM Protest

The 2002 ALM Protest took place on June 21, 2002, on the sidewalk near Central Park across from the Indian Embassy. The video of the 2002 ALM Protest reveals that Hashmi was one of the leaders of the protest.  In particular, Hashmi led portions of the protest by pacing and exhorting his audience to wage "jihad" and expressing his approval of Hezbollah, Hamas, and the Taliban.  He also described the President of the United States as a "terrorist."  Indeed, following his example, other ALM members responded with violent remarks, including such statements as "death to American army."

### B.  2003 ALM Meeting

The 2003 ALM Meeting took place on February 26, 2003, at Queens College and was attended by approximately 16 students,

as well as a journalist, whom the Government plans to call as a witness.  The journalist would testify that Hashmi participated in the ALM meeting, that Hashmi described an "outright conspiracy against Islam by Jews and Christians," and that Hashmi instructed his audience to take a violent approach against the United States, stating: "We are not Americans.  We're Muslims and they are going to deport and attack us.  It is us versus them; [t]ruth against falsehood, the colonizers and masters against the oppressed, and we will burn down the master's house!"  Hashmi explicitly opposed governmental authority in particular, stating that: (1) "We reject the UN, reject the US, reject all law and order.  Don't lobby Congress or protest, we don't recognize Congress!  The only relationship you should have with America is to topple it!"; and (2) "We must not recognize any governmental authority, or any authority at all besides Allah."

## Discussion

As discussed more fully below, in a case where Hashmi's intent to support al Qaeda will be disputed by the defense, evidence of Hashmi's prior participation in ALM and support for jihad is admissible as direct evidence of the charged offenses (*see* Part I *infra*) and as background to the charged conspiracy (*see* Part II *infra*).  Although evidence of Hashmi's ALM participation includes speaking roles, admission of the evidence would not violate the First Amendment (*see* Part III *infra*).

7

Finally, the evidence's probative value is not outweighed by unfair prejudice (*see* Part IV *infra*).

## I.   The Evidence In Question Is Admissible as Direct Evidence of the Charged Offenses.

Evidence of Hashmi's participation in the 2002 ALM Protest and in the 2003 ALM Meeting is probative of: (1) Hashmi's knowledge of al Qaeda's existence, nature, and goals; and (2) Hashmi's knowledge that the goals of al Qaeda would be advanced by the support he provided to the CW in connection with the stored goods and money for travel.

First, the evidence in question would tend to show Hashmi's knowledge that al Qaeda engaged in terrorism – an element of the charged offenses.  The CW will testify that ALM supported the jihadist agenda of al Qaeda by conducting frequent meetings to spread that organization's violent ideology and otherwise support the al Qaeda-led insurgency in Afghanistan. The evidence in question would establish that Hashmi was an active participant in ALM and, therefore, would tend to show that, by the time of the charged conspiracy, Hashmi knew about al Qaeda, its goals, and its operations.  The evidence in question would also corroborate the CW's testimony that Hashmi was associated with ALM and aware of that organization's agreement with al Qaeda's agenda.

Moreover, the evidence in question would also be probative of Hashmi's knowledge that al Qaeda would be the

ultimate beneficiary of the support he provided to the CW.  The CW will testify that he discussed supporting al Qaeda with Hashmi during the time period in question, when they both were associated with ALM.  Accordingly, the evidence of Hashmi's ALM activities corroborates the CW's testimony on this point, and tends to show that Hashmi knew that the CW would be providing the goods that Hashmi stored in his apartment to al Qaeda to advance al Qaeda's agenda.

In addition, proof of Hashmi's membership in ALM would help "rebut a claim of ignorance" – *i.e.*, that he was merely attempting to help the CW without knowledge that the assistance was in support of al Qaeda.  *United States* v. *Santoro*, 302 F.3d 76, 83 (2d Cir. 2002).  Evidence of ALM's ties to al Qaeda, when combined with the evidence that Hashmi was a trusted and active member of ALM, support the CW's claim that the CW had informed Hashmi that the gear was destined for al Qaeda.  Without the evidence of Hasmi's prior involvement in ALM, a jury would be less likely to believe the CW's account and unable to fully understand why the CW would inform Hashmi of the target of the support.

## II. Hashmi's Prior Participation in ALM Is Admissible as Background to the Charged Conspiracy.

Evidence of Hashmi's 2002 and 2003 participation in ALM events is also admissible as background to the charged conspiracy, as it provides context for the relationship of trust

between co-conspirators Hashmi and the CW.  Specifically, it is crucial to explaining why the CW sought out Hashmi for assistance and why the CW informed Hashmi of the purpose for the gear and the money.

**A.   Applicable Law**

The Second Circuit has held that "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.  Relevant evidence is not confined to that which directly established an element of the crime."  *United States* v. *Gonzales*, 110 F.3d 936, 941 (2d Cir. 1997).  Further, evidence may be admitted also to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."  *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (citations omitted); *see also United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."); *United States* v. *Rosa*, 11 F.3d 315, 333-34 (2d Cir. 1993) (affirming admission of evidence of prior acts that showed development of illegal relationship between defendant and co-conspirator).

To establish a conspiracy, evidence of the alleged co-conspirators' association is clearly relevant, as it provides an essential predicate to the existence of an agreement among members of the conspiracy. *See United States* v. *Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (upholding evidence as relevant where "probative of [defendants'] relationship as co-conspirators"); *United States* v. *Armone*, 363 F.2d 385, 403-04 (2d Cir. 1966) ("Since agreement is an element of conspiracy, evidence of association is relevant."); *see also United States* v. *Apker*, 705 F.2d 293, 298 (8th Cir. 1983) ("While proof of an association or acquaintance alone is not enough to establish the conspiracy, it has sufficient bearing on the issue to make it admissible."); *United States* v. *Giese*, 597 F.2d 1170, 1187 (9th Cir. 1979) (same). For instance, in *Salameh*, the Court affirmed the admission of evidence that two members of the conspiracy possessed the same type of radical books. The Court held that admission of the books into evidence was proper, because, among other reasons, "the fact that [defendants] both possessed the same documents was probative of their relationship as co-conspirators." *Salameh*, 152 F.3d at 111.

## B.   Discussion

In light of these standards, the evidence in question is admissible as "background evidence" that "adds context and dimension to the government's proof" of the charges. Hashmi's

membership in ALM provides context and background to the nature
of the relationship between Hashmi and the CW.  That Hashmi was
so involved with ALM and publicly supported jihad helps explain
why the CW sought assistance from Hashmi in particular and why
the CW trusted Hashmi with inside information regarding the
conspiracy.  In other words, Hashmi's prior membership in ALM
helps explain the existence of the relationship of trust between
Hashmi and the CW.  *See United States* v. *Mercado*, 573 F.3d 138,
141 (2d Cir. 2009) (affirming admission of evidence on grounds
that prior acts showed "provid[ed] background for the events
alleged in the indictment and enabl[ed] the jury to understand
the complete story of the crimes charged, or how the illegal
relationship between coconspirators developed").  Indeed, without
evidence of Hashmi's prior ALM involvement, a jury would be
deprived of the context of the conspirators' agreement to provide
material support.  *Coonan*, 938 F.2d at 961 ("background evidence"
that can "furnish an explanation of the understanding or intent
which certain acts were performed," and "demonstrat[e] the
context of certain events relevant to the charged offense," is
clearly relevant to the charged offenses and therefore
admissible).  Specifically, without understanding Hashmi's prior
involvement in ALM, a jury would be less likely to believe the
CW's testimony regarding Hashmi's assistance in providing support
to al Qaeda.  For this reason alone, the video of the 2002 ALM

12

Protest and the testimony regarding the 2002 ALM meeting is
relevant to Hashmi and the CW's "relationship as co-
conspirators," and therefore admissible.  *Salameh*, 152 F.3d at
111.

### III. Admission of Evidence of Hashmi's Speaking Roles at the 2002 ALM Protest and 2003 ALM Meeting Does Not Offend the First Amendment.

The admission of evidence related to Hashmi's speaking
roles at the 2002 ALM Protest and 2002 ALM Meetinge does not
offend the First Amendment notions of freedom of speech or
association.  The defendant is not being prosecuted for his
political or religious beliefs and the defendant's political or
religious associations have not been criminalized.  Instead, such
association merely provides evidence crucial to establishing the
basis of the conspiracy.  While actual prosecution of behavior
protected by the First Amendment may offend the Constitution, it
is "beyond cavil that 'the First Amendment . . . does not
prohibit the evidentiary use of speech to establish the elements
of a crime or to prove motive or intent.'"  *United States* v.
*Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) (quoting *Wisconsin* v.
*Mitchell*, 508 U.S. 476, 489 (1993)).  Accordingly, a challenge to
the admission of evidence on First Amendment grounds must fail.

In *Salameh*, the Second Circuit considered a challenge
by the defendant to the admission into evidence of political
reading materials (including one book titled "Facing the Enemies

of God") on the grounds that admission would violate the
defendant's First Amendment rights.  *Salameh*, 152 F.3d at 111-12.
The Court disagreed.  Because the defendants were not "prosecuted
for possessing or reading terrorist materials," and the evidence
was used merely to "prove the existence of the bombing conspiracy
and its motive," the First Amendment was not implicated.  *Id.* at
112.  Further, the Court explained, any prejudicial effect of the
introduction of the defendants' speech or associational activity
was "ameliorated by the trial court's instruction that mere
possession of the literature is not illegal and that the
defendants' political beliefs were not on trial."  *Id.; see also
United States* v. *Giese*, 597 F.3d at 1184-88 (evidence of
defendant's possession of a book, otherwise protected by the
First Amendment, was properly admitted where the books bore the
fingerprints of defendant and co-conspirators and therefore
tended show association among members of the conspiracy).  Only
where admission of associational evidence has "no bearing on the
issue being tried," should evidence be excluded on First
Amendment grounds.  *Dawson* v. *Delaware*, 503 U.S. 159, 168 (1992)
(excluding evidence in sentencing of defendant's association with
the Aryan Brotherhood, where underlying criminal offense of
murder was not racially motivated, and bore no relation to
defendant's membership in that organization).

Here, Hashmi is not being charged with a crime for his

14

political beliefs, association, or membership in ALM.  Instead,
the Government seeks to introduce this evidence to help show
Hashmi's knowing participation in the conspiracy and the
relationship of trust between Hashmi and the CW.  *Salameh*, 152
F.3d at 112.  Moreover, unlike *Dawson*, the evidence bears a
strong relation to the issue being tried — Hashmi's knowing
participation in a conspiracy to provide material support to al
Qaeda.  At the very least, under *Salameh*, a simple jury
instruction that Hashmi's political and religious beliefs were
not on trial, but merely background evidence to the conspiracy,
would cure any First Amendment concerns.

**IV.  The Proffered Evidence Is Also Admissible Under Federal Rule
of Evidence 403**

        The proffered evidence is also admissible under Federal
Rules of Evidence 402 and 403, which provide that, in general,
"relevant evidence is admissible," but "may be excluded if its
probative value is substantially outweighed by the danger of
unfair prejudice confusion of the issues, or misleading the jury,
or by considerations of undue delay, waste of time, or needless
presentation of cumulative evidence."  Fed. R. Evid. 402, 403.
Evidence is not excludable simply because it is "prejudicial."
"What 'prejudice' as used in Rule 403 means is that the admission
is, as the rule itself literally requires, 'unfair' rather than
'harmful.'"  *United States* v. *Jimenez*, 789 F.2d 167, 171 (2d Cir.
1986); *see also United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d

15

Cir. 1995) ("The prejudice that Rule 403 is concerned with
involves 'some adverse effect . . . beyond tending to prove the
fact or issue that justified its admission into evidence.'")
(quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir.
1980)).

The evidence is relevant for at least three reasons.
As described in Part I *supra*, Hashmi's participation in the 2002
and 2003 ALM events is relevant to Hashmi's knowledge of what al
Qaeda is and the fact that the type of support that he provided
would benefit al Qaeda.  Further, as described in Part II *supra*,
Hashmi's membership in ALM helps explain the relationship of
trust between Hashmi and the CW and provides important background
information to the charged conduct.

To be sure, as with any evidence probative of the
commission of a crime, there will be some prejudicial effect
resulting from the admission of the evidence against Hashmi.
That Hashmi was an active member of an extremist organization,
and as such, attended particular protests, prejudices the
defendant.  The test of exclusion under Rule 403, however, is
whether such evidence would be *unfairly* prejudicial.  Because the
nature of the evidence is not unfairly prejudicial when measured
against the charges themselves, the evidence should not be
excluded under Rule 403.

Hashmi is charged with the very serious allegation that

16

he conspired to provide material support, in the form of military gear, to al Qaeda.  The nature of the evidence, that Hashmi was a member of the extremist ALM organization, is not unfairly prejudicial when measured against the charges themselves and other evidence in the case.  Indeed, the defendant here is charged with providing material support to al Qaeda, arguably the most dangerous terrorist organization in the world.  When compared to the seriousness of the charge, evidence that the defendant was a member of an organization such as ALM is not unduly prejudicial.  *See United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) ("Moreover, we find no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction."); *United States* v. *Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (admitting under Rule 403 "evidence [that] did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction").

Further, any prejudicial effect of the evidence could be cured by a proper jury instruction.  In *Salameh*, the Second Circuit held that, even if admission into evidence of the defendant's possession of politically volatile books was prejudicial to the defendant, "any prejudicial effect they might have had was ameliorated by the trial court's instruction that mere possession of the literature is not illegal and that the

17

defendants' political beliefs were not on trial." *Salameh*, 152 F.3d at 112.  By noting that defendant's association with ALM is (1) not on trial and (2) not in and of itself illegal, any danger of unfair prejudice would be adequately dissipated.  By instructing the jury that the evidence is admissible only to provide background to the charged conspiracy and to help prove the defendant's knowing participation in the charged crimes, any unfair prejudice would be cured.  The probative value of the evidence with such an instruction would substantially outweigh any prejudicial effect, and is therefore admissible under Rule 403.

Finally, the proffered evidence will not be confusing or wasteful of the jury's time in any way.  As noted above, the evidence completes the story of the conspiracy by placing into context the nature of the relationship of the co-conspirators and explaining the association and degree of trust between them.  It explains why the CW chose to stay at Hashmi's apartment, why the CW chose to store the gear there for the eventual delivery to al Qaeda, and why the CW chose to ask Hashmi to help pay for his travel expenses to deliver the gear.

## Conclusion

For all of the foregoing reasons, the Government respectfully requests that the evidence proffered herein in Paragraphs II.A and II.B should be admitted during the trial of

18

this matter as direct evidence of the crimes charged in the
Indictment and as background to the conspiracy charged.

Dated:      New York, New York
            October 23, 2009

                            Respectfully submitted,

                            PREET BHARARA
                            United States Attorney

                    By:_____/s/_____
                            BRENDAN R. MCGUIRE
                            IRIS LAN
                            Assistant United States Attorneys
                            Tel. No.: (212) 637-2220/2263

19