IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | | 06 Cr. 442 (LAP) |
|---|---|---|
| v. | | The Hon. Loretta A. Preska |
| SYED HASHMI, | | |
| Defendant. | | Filed via ECF |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE AT TRIAL**

COMES NOW the defendant, SYED HASHMI, by and through counsel, and in response to the government's motion to admit certain evidence at trial, states the following:

**Background**

The government seeks to offer two pieces of evidence at trial: "(1) an excerpt of a videotape, approximately five minutes in length, depicting the defendant leading a June 2002 ALM protest in Manhattan . . . ; and (2) the testimony of a witness who attended a February 2003 ALM meeting at Queens College . . . , which the defendant helped lead and where he spoke at length."  Government's Memorandum in Support of Its Motion to Admit Certain Evidence at Trial ("Govt. Memo.") at 1-2.

The government asserts that the evidence described above is admissible for three reasons: (1) Mr. "Hashmi's role in ALM is probative of his knowledge of the existence of al Qaeda, its nature as a foreign terrorist organization, and its goals and methods of achieving those goals;" (2) Mr. "Hashmi's professed support for jihad during the 2002 ALM Protest and the 2003 ALM

Meeting tends to show that Hashmi undertook the acts in question – permitting the cooperating witness ("CW") to store goods in his apartment and otherwise facilitating the CW's delivery of those goods to al Qaeda – knowing that those acts would further al Qaeda's goals;" and (3) Mr. "Hashmi's active membership in ALM, the organization through which he met the CW, helps to explain the nature of the relationship between Hashmi and the CW and provides important background information to the charged conduct."  Govt. Memo. at 2-3.

**Discussion**

I.      **The Proffered Evidence is Inadmissible Under Federal Rule of Evidence 404(b)**

      A.      **Rule 404(b) Bars Evidence of Other Crimes, Wrongs, and Acts Except in Limited Situations**

The indictment in this case alleges a conspiracy to provide material support to al Qaeda that is alleged to have been in existence from "at least in or about January 2004, up to and including in or about May 2006."   The government argues that the proffered evidence is admissible to demonstrate Mr. Hashmi's knowledge concerning al Qaeda and as "background" to explain the relationship between the CW and Mr. Hashmi.  The reality is that the evidence is being offered on the issue of propensity.  Rule 404(b) forbids this use of the evidence.

Under Rule 404(b), evidence "of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b). Such evidence, "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Id.

The core problem with other acts evidence, as the United States Supreme Court pointed out in Michelson v. United States, 335 U.S. 469 (1948), is not that such evidence lacks

persuasive value.  The vice of such evidence is just the opposite, *i.e.*, it may "over persuade" a jury:

> The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

Id. at 475-76.

In their treatise on the federal rules of evidence, Professors Saltzburg, Martin and Capra offer the following useful formula:

> In deciding whether bad acts evidence is offered to prove character or some not-for-character purpose, we think it is helpful to consider whether the fact finder is asked to engage in a two-step reasoning process: to infer from behavior on one occasion something about the nature of the person and then to infer from that how the person probably would have behaved on another occasion when the only connection between the two occasions is that the fact finder believes that people of a certain type would act the same way both times.  If so, then the evidence is character evidence.  If the fact finder can reason from one act about another without going through the first step, the evidence is not character evidence.

Saltzburg, Martin & Capra, 1 Federal Rules of Evidence Manual (9th Ed. Lexis-Nexis 2006) at pp. 404-21, 22.  The government's proffered evidence fails this elementary test and can be seen as the government's effort to "over-persuade" the jury that a Muslim defendant who makes radical public statements necessarily must have the propensity to provide material support to al Qaeda.

In <u>Huddleston v. United States</u>, 485 U.S. 681 (1988), the Supreme Court noted that the admissibility of bad-act evidence depends on "'whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under rule 403.'" <u>Id.</u> at 688 (quoting Advisory Committee notes).  The Second Circuit has underscored the need for a showing of relevance before 404(b) evidence is to be admitted.  <u>United States v. Gordon</u>, 987 F.2d 902, 908 (2d Cir. 1993).  If the evidence does not provide a legitimate basis for inferring legitimate 404(b) purposes, the evidence cannot be received.  <u>See</u> <u>United States v. Afjehei</u>, 869 F.2d 670, 674 (2d Cir. 1989).

**B.  The Evidence of Mr. Hashmi's Participation in a Lawful Demonstration and in a Public Meeting is Not Direct Evidence of the Charged Offenses and Does Not Fit Within the Knowledge Exception of 404(b)**

The Grand Jury issued an indictment charging Mr. Hashmi with participation in a conspiracy that began in January 2004.  The evidence that the government seeks to admit relates to lawful non-violent activities that occurred from about a year to about a year and half before the charged conspiracy allegedly began.  Such evidence is too remote in time to be considered direct evidence of the charged conspiracy.

The government argues that the evidence is probative of Mr. Hashmi's knowledge of al Qaeda and that the goals of al Qaeda would be advanced by providing the alleged support to the CW.  Govt. Memo. at 2-3.

"[E]vidence of another act should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence.'" <u>United States v. Afjehei</u>,

869 F.2d 670, 674 (2d Cir. 1989)(quoting United States v. Peterson, 808 F.2d 969, 974 (2d Cir.

1987).

> "Similarity, being a matter of relevancy, is judged by the degree in
> which the prior act approaches near identity with the elements of
> the offense charged. There is no necessity for synonymity but there
> must be *substantial* relevancy . . . ." United States v. Kasouris, 474
> F.2d 689, 692 (5th Cir.1973) (emphasis in original); but see 2
> Weinstein's Evidence ¶ 404[12], at 404-90 to 404-91 (1988)
> (suggesting that trial court is given especially broad discretion to
> view acts as similar in narcotics cases). If the other-act evidence
> does not provide a reasonable basis for inferring knowledge, its
> offer for that purpose should be rejected on grounds of relevance.

United States v. Afjehei, 869 F.2d 670, 674 (2d Cir. 1989).  Absent similarity, other act evidence

offered to prove a defendant's intent or knowledge is not relevant.  United States v. LaFlam, 369

F.3d 153, 156 (2d Cir. 2004); United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996), cert. denied,

519 U.S. 888 (1996); United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994); United States v.

Gordon, 987 F.2d 902, 908-09 (2d Cir. 1993); United States v. Afjehei, 869 F.2d 670, 674 (2d

Cir. 1989).

The proffered evidence does not lead one to infer that because Mr. Hashmi spoke openly

against the U.S. government that Mr. Hashmi must have undertaken an act to provide material

support to al Qaeda.  At the 2003 ALM meeting Mr. Hashmi never discussed al Qaeda and never

stated that he supported al Qaeda.  In the 2002 demonstration, Mr. Hashmi never made any

statement concerning al Qaeda and neither did any person involved in the small demonstration.

While the government alleges that Mr. Hashmi stated that "Bin Laden is not a terrorist," Govt.

Memo. at 2 n. 1, such a statement is a far cry from the act of providing material support to al

Qaeda.

The government states that "the CW will testify that ALM supported the jihadist agenda

of al Qaeda by conducting frequent meetings to spread that organization's violent ideology and

otherwise support the al Qaeda-led insurgency in Afghanistan." Govt. Memo. at 8. This statement inaccurately conflates the respective agendas and ideologies of ALM and al Qaeda. Like any other legal special interest group, ALM held public meetings, rallies, press conferences, and sidewalk literature stalls to persuade the populace to accept Islam; ALM did not engage in armed struggle or acts of violence. ALM as an organization had a position that all of its members were to follow the laws of the country in which members resided, including the UK and the USA. ALM as an organization did not provide any type of material support to al Qaeda. The proffered evidence does not demonstrate that ALM or Mr. Hashmi encouraged anyone to provide material support to al Qaeda or that Mr. Hashmi personally would take any action to provide material support to al Qaeda.

Because there is such a dissimilarity between Mr. Hashmi's alleged public speech a year to a year and a half before the charged conspiracy versus the alleged criminal acts of providing and conspiring to provide material support to al Qaeda, the Court should find that the government has not met its burden under Rule 404(b).

### C.    The Proffered Evidence Should Not be Admitted as Background to the Charged Conspiracy

The government argues that the proffered evidence should be admitted "as 'background evidence' that 'adds context and dimension to the government's proof' of the charges." Govt. Memo at 11. The Court should reject this argument.

A talismanic incantation of the phrases "background evidence" and "context and dimension" does not in and of itself permit the admission of other acts evidence. The government avers that the proffered evidence provides context and background to the nature of the relationship between Mr. Hashmi and the CW, Govt. Memo. at 11-12, yet Mr. Hashmi's alleged participation at the 2002 demonstration and at the 2003 meeting have nothing to do with

any relationship between the CW and Mr. Hashmi.  There is no suggestion that the CW was present at either event or that the CW worked with Mr. Hashmi in any way to organize the events.  The specific events, held a year and more before the inception of the alleged conspiracy, do not shed any light on the relationship between the CW and Mr. Hashmi.  Even though the Second Circuit has held that "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges *can* have that tendency," United States v. Gonzales, 110 F.3d 939, 941 (2d Cir. 1997)(emphasis added), here the proffered evidence does not have the tendency to prove the government's case or to shed any meaningful light on the specific relationship between the CW and Mr. Hashmi.  Thus, the Court should not admit the proffered evidence as "background" to the charged conspiracy.

**II.    The Proffered Evidence is Not Admissible Under Federal Rule of Evidence 403**

Pursuant to Rule 403, "the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value."  United States v. Al-Moayad, 545 F.3d 139, 160 (2d Cir. 2008) (citations omitted).  Such an assessment reveals that any marginal probative value of the government's proffered evidence would be outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

As discussed by the Supreme Court, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997)(citing J. Weinstein, M. Berger, & J. McLaughlin,

Weinstein's Evidence ¶ 403[03] (1996).  "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" <u>Id.</u> (quoting Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. App., p. 860).  The Supreme Court cautioned against "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)."  <u>Id.</u> at 180-81.

> As then-Judge Breyer put it, "Although . . . 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged-or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment-creates a prejudicial effect that outweighs ordinary relevance."

<u>Id.</u> at 181 (quoting <u>United States v. Moccia</u>, 681 F.2d 61, 63 (1st Cir. 1982)).

Mr. Hashmi, a Muslim charged with providing material support to al Qaeda, will stand trial mere blocks from the World Trade Center in lower Manhattan.  It is highly likely, if not guaranteed, that every member of the jury will have a strong negative reaction to the rhetoric attributed to Mr. Hashmi in the proffered evidence.  In light of the anticipated extensive testimony of the CW concerning the specific acts Mr. Hashmi allegedly made in furtherance of the conspiracy and the extreme prejudice that will be incurred by the proffered evidence, the probative value of the proffered evidence is far too attenuated to be admissible under a Rule 403 analysis.  The proffered evidence will serve to inflame the jury and lead the jury to convict based upon hostility and bias against Mr. Hashmi, not based upon the strength of the evidence relevant to the charged crimes.  Thus, the Court should preclude the proffered testimony pursuant to Rule 403.

**III.     The Proffered Evidence is Inadmissible Because Mr. Hashmi's Alleged Speech Was Lawful and Protected Under the First Amendment**

The Supreme Court recognizes that the First Amendment right to freedom of association encompasses "a right to associate for the purpose of engaging in those activities protected by the First Amendment."  Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984).  The latter includes the "freedom to associate with others for the common advancement of political beliefs and ideas."  Buckley v. Valeo, 424 U.S. 1, 15 (1976)(internal quotations and citations omitted); see also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 933 (1982) (explaining that "the right of individuals to combine with other persons in pursuit of a common goal by lawful means" is protected by the First Amendment).

The First Amendment right to free speech includes the freedom to advocate the use of force or violation of the law, see Brandenburg v. Ohio, 395 U.S. 444, 447-49 (1969), to advocate for illegal action at some indefinite time in the future, Hess v. Indiana, 414 U.S. 105, 108-09 (1973)(per curium), to advocate the political goals of a terrorist organization, including praising such groups for using terrorism to achieve its objectives, Humanitarian Law Project v. Reno, 205 F.3d 1130, 1133 (9th Cir. 2000), and even to advocate for action that makes it more likely that someone will be harmed at some unknown time in the future by an unrelated third party. Planned Parenthood of the Columbia/Willamette Inc. v. American Coalition of Life Activists, 244 F.3d 1007, 1015 (9th Cir. 2001), vacated on other grounds by 290 F.3d 1058 (9th Cir. 2002)(en banc).  Simply put, "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."  Texas v. Johnson, 491 U.S. 397, 414 (1989).

While "the First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent," United States v. Salameh, 152 F.3d 88, 112 (2d Cir. 1998)(quoting Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)), the First

Amendment does bar the evidentiary use of speech to air a defendant's abstract beliefs in front of a jury.  See Dawson v. Delaware, 503 U.S. 159, 167 (1992)(finding that "[w]hatever label is given to the evidence presented, however, we conclude that [the defendant's] First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than [the defendant's] abstract beliefs").  This is especially true when such evidence is "employed simply because the jury [will] find these beliefs morally reprehensible."  Id.

The Supreme Court has "consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization."  Healy v. James, 408 U.S. 169, 185- 86 (1972).  "'[G]uilt by association alone' . . . is an impermissible basis upon which to deny First Amendment rights."  Id. at 186 (citation omitted); see also U.S. v. Robel, 389 U.S. 258, 264-65 (1967)(finding that "guilt by association alone," even in the name of national defense, violates the First Amendment.).  "[T]he critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not."  Healy, 408 U.S. at 192.

The proffered evidence does not establish the elements of the charged crimes and does not prove motive or intent to provide material support to al Qaeda.  Mr. Hashmi's alleged participation in and speech at the 2003 meeting and at the 2002 demonstration, though "offensive or disagreeable" to many, was perfectly lawful under the First Amendment.  See Texas v. Johnson, 491 U.S. 397, 414 (1989).  Thus, the Court should preclude the proffered evidence on First Amendment grounds.

## Conclusion

For the foregoing reasons, it is respectfully requested that the Court deny the government's motion to admit the proffered evidence.

Dated:  November 4, 2009

Respectfully submitted,

_____/S/_____
SEAN M. MAHER
SM 7568
KHURRUM B. WAHID
*Counsel for the Defendant*
Wahid, Vizcaino & Maher LLP
233 Broadway, Suite 801
New York, New York 10279
(212) 661-5333
(212) 661-5255 fax

ANTHONY L. RICCO
DAVID A. RUHNKE
*Counsel for the Defendant*