USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA            :    06 Crim. 442 (LAP)
                                    :
            v.                      :    MEMORANDUM AND ORDER
                                    :
SYED HASHMI,                        :
                                    :
                    Defendant.      :
-----------------------------------X

Loretta A. Preska, Chief U.S.D.J.:

Defendant Syed Hashmi ("Hashmi") is charged in a four-count superseding indictment (the "Indictment") with, inter alia, providing "material support or resources" to a designated foreign terrorist organization ("FTO"), namely, al Qaeda, in violation of 18 U.S.C. § 2339B ("§ 2339B"), and contributing "funds, goods, or services" thereto in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1705(b) (the "IEEPA"). Hashmi moved to dismiss the Indictment on constitutional grounds and for failure to state an offense (dkt. no. 62). He also moved separately for a bill of particulars (dkt. no. 65). On February 17, 2009, the Court heard oral argument and denied both motions. The rationale for that ruling is set forth below.

**BACKGROUND**

Hashmi's motion to dismiss turns in part on the legal sufficiency of the Indictment.  In determining whether an indictment is legally sufficient, the Court takes all pertinent allegations as true.  Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16, (1952); see also United States v. Velastegui, 199 F.3d 590, 592 n.2 (2d Cir. 1999).  A summary of those allegations follows.

Count One of the Indictment charges Hashmi with conspiracy to provide material support to an FTO in violation of 18 U.S.C. § 2339B; Count Two charges him with providing and attempting to provide such support.  These Counts allege that between January 2004 and May 2006, Hashmi, somewhere outside the United States and in league with unnamed others, conspired to provide and actually did provide al Qaeda, an FTO, with "property, tangible and intangible, and service, including currency and other physical assets," among which was "military gear." Hashmi's co-conspirators then transported the military gear to South Waziristan, Pakistan, for al Qaeda's use in fighting United States troops in Afghanistan.  Counts One and Two further allege that Hashmi knew al Qaeda was a

designated terrorist organization and that it had engaged
and was engaging in terrorist activity.   (Ind.[1] ¶¶ 1-3.)[2]

---

[1] "Ind." refers to the Indictment filed by the Government on
Jan. 29, 2009.

[2] Count One charges a conspiracy to violate § 2339B as
follows:

> From at least in or about January 2004, up
> to and including in or about May 2006, in an
> offense begun out of the jurisdiction of any
> particular State or district of the United
> States, SYED HASHMI, a/k/a "Fahad," the
> defendant, and others known and unknown, at least
> one of whom was first brought to and arrested in
> the Southern District of New York, unlawfully and
> knowingly did combine, conspire, confederate, and
> agree together and with each other to provide
> "material support or resources," as that term is
> defined in Title 18, United States Code,
> Section 2339A(b)(1), namely, property, tangible
> and intangible, and service, including currency
> and other physical assets, to a foreign terrorist
> organization, to wit, al Qaeda, which was
> designated by the Secretary of State as a foreign
> terrorist organization on October 8, 1999,
> pursuant to Section 219 of the Immigration and
> Nationality Act, and has remained so designated
> through and including the present time, in
> violation of Title 18, United States Code,
> Section 2339B.
>
> It was a part and an object of the
> conspiracy that SYED HASHMI, a/k/a "Fahad," the
> defendant, a United States citizen, agreed with
> others to assist al Qaeda by providing military
> gear to co-conspirators not named as defendants
> herein who transported the gear to al Qaeda
> associates in South Waziristan, Pakistan, knowing
> that al Qaeda was a designated terrorist
> organization (as defined in Title 18, United
> States Code, Section 2339B(g)(6)), that al Qaeda
> had engaged and was engaging in terrorist
> activity (as defined in Section 212(a)(3)(B) of
> the Immigration and Nationality Act), and that

(continued on next page)

(continued)

> al Qaeda had engaged and was engaging in
> terrorism (as defined in Section 140(d)(2) of the
> Foreign Relations Authorization Act, Fiscal Years
> 1988 and 1989), in violation of Title 18, United
> States Code, Section 2339B.
>> (Title 18, United States Code, Sections
> 2339B and 3238.)

(Ind. ¶¶ 1-2.)

Count Two charges a substantive violation of § 2339B
as follows:

> From at least in or about January 2004, up to and
> including on or about May 2006, in an offense
> begun out of the jurisdiction of any particular
> State or district of the United States, SYED
> HASHMI, a/k/a "Fahad," the defendant, and others
> known and unknown, at least one of whom was first
> brought to and arrested in the Southern District
> of New York, unlawfully and knowingly did provide
> and attempt to provide "material support or
> resources," as that term is defined in Title 18,
> United States Code, Section 2339A(b)(1), namely,
> property, tangible and intangible, and service,
> including currency and other physical assets, to
> a foreign terrorist organization, to wit,
> al Qaeda, which was designated by the Secretary
> of State as a foreign terrorist organization on
> October 8, 1999, pursuant to Section 219 of the
> Immigration and Nationality Act, and has remained
> so designated through and including the present
> time, in that SYED HASHMI, a/k/a "Fahad," a
> United States citizen, provided military gear to
> others not named as defendants herein who
> transported it to al Qaeda associates in South
> Waziristan, Pakistan, knowing that al Qaeda was a
> designated terrorist organization (as defined in
> Title 18, United States Code, Section
> 2339B(g)(6)), that al Qaeda had engaged and was
> engaging in terrorist activity (as defined in
> Section 212(a)(3)(B) of the Immigration and
> Nationality Act), and that al Qaeda had engaged
> and was engaging in terrorism (as defined in
> Section 140(d)(2) of the Foreign Relations

(continued on next page)

Counts Three and Four charge Hashmi with,
respectively, conspiracy to violate and substantive
violation of the IEEPA in that, by providing al Qaeda with
military gear to be used against United States forces in
Afghanistan, he knowingly violated a regulation issued
under the IEEPA that prohibits "making or receiving a
'contribution of funds, goods, and services to, and for the
benefit of' a designated terrorist organization."
(Ind. ¶¶ 4, 5.)[3]

_____

(continued)
     Authorization Act, Fiscal Years 1988 and 1989).
          (Title 18, United States Code, Sections
     2339B, 2 and 3238.)
(Ind. ¶ 3.)

     [3] Count Three charges conspiracy to violate the IEEPA
as follows:

          From at least in or about January 2004, up
     to and including on or about May 2006, in an
     offense begun out of the jurisdiction of any
     particular State or district of the United
     States, SYED HASHMI, a/k/a "Fahad," the
     defendant, a United States person, unlawfully,
     willfully, and knowingly violated a regulation
     issued under Chapter 35 of Title 50, United
     States Code, to wit, SYED HASHMI, a/k/a "Fahad,"
     the defendant, along with others known and
     unknown, did combine, conspire, confederate, and
     agree together and with each other to make and
     receive a contribution of funds, goods, and
     services to, and for the benefit of, al Qaeda, a
     specially designated terrorist organization, by
     agreeing with others to provide military gear to
     al Qaeda to be used by al Qaeda to fight against
(continued on next page)

Hashmi argues that all four Counts fail to state a cognizable offense.  He further argues that the § 2339B charges are unconstitutional violations of due process, his right of free speech and association, and the ex post facto clause.  Finally, he argues that the IEEPA is an unconstitutional delegation of Congressional authority and incurably vague.

---

(continued)
        United States forces in Afghanistan.
        (Title 50, United States Code, Section
    1705(b); Title 31, Code of Federal Regulations,
    Sections 595.204 & 595.205.)
(Ind. ¶ 4.)

    Count Four charges a substantive violation of the
IEEPA as follows:

        From at least in or about January 2004, up
    to and including on or about May 2006, in an
    offense begun out of the jurisdiction of any
    particular State or district of the United
    States, SYED HASHMI, a/k/a "Fahad," the
    defendant, a United States person, unlawfully,
    willfully, and knowingly violated a regulation
    issued under Chapter 35 of Title 50, United
    States Code, to wit, HASHMI, along with others
    known and unknown, attempted to and did provide
    military gear to al Qaeda to be used by al Qaeda
    to fight against United States forces in
    Afghanistan.
        (Title 50, United States Code, Section
    1705(b); Title 31, Code of Federal Regulations,
    Sections 595.204 & 595.205; and Title 18, United
    States Code, Section 2.)
(Ind. ¶ 5.)

**ANALYSIS**

**I.    MOTION TO DISMISS**

    **A.    Statutory Framework**

        1.    § 2339B

In April 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA") and established § 2339B.  Pub. L. No. 104-132, 110 Stat. 1214.  As currently codified, § 2339B provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any terms of years or for life.

§ 2339B(a)(1).  The term "material support or resources" is defined as

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b).[4]  In December 2004, Congress enacted the Intelligence Reform and Terrorism Prevention Act

---

[4] Section 2339A ("§ 2339A") is an antiterrorism law enacted by Congress in 1994 as part of the Violent Crime Control and Law Enforcement Act.  Pub. L. No. 103-322, Title XII, § 120005(a), 108 Stat. 1796, 2022 (codified as amended at 18 U.S.C. § 2339A(a)).

("IRTPA").  Pub. L. No. 108-458, 118 Stat. 3638.  The IRTPA amended § 2339B in two ways that bear on Hashmi's motion. First, the term "material support or resources" was provided in its present form, stated above.  Second, the IRTPA added a mens rea requirement to § 2339B.  To violate the amended statute, a person providing "material support or resources" to an FTO must know that (1) "the organization is a designated terrorist organization," (2) "the organization has engaged or engages in terrorist activity," or that (3) "the organization has engaged or engages in terrorism."  18 U.S.C. § 2339B(a)(1).

### 2.  IEEPA

Congress enacted the IEEPA in December 1977.  Pub. L. No. 95-223, 91 Stat. 1626 (codified at 50 U.S.C. § 1701 et seq.).  The IEEPA confers on the President certain powers "exercised to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).  In January 1995, President Clinton, pursuant to this authority, issued Executive Order 12947, which declared a national emergency with respect to "grave acts of violence committed by

foreign terrorists that disrupt the Middle East peace
process."  Exec. Order No. 12,947, 60 Fed. Reg. 5,079
(1995).  The order prohibited "any transaction or dealing
by United States persons . . . in property of [specially
designated terrorists] . . . , including the making or
receiving of any contribution of funds, goods, or services
to or for the benefit of such persons."  Id., 60 Fed. Reg.
5079.  In August 1998, President Clinton added Osama bin
Laden and al Qaeda to the list of "specially designated
terrorists."  Exec. Order 13099, 63 Fed. Reg. 45167 (1998).
As amended in September 1996, Section 206 of the IEEPA
provided for the following penalties:

> (a) A civil penalty of not to exceed $10,000 may
> be imposed on any person who violates, or
> attempts to violate, any license, order, or
> regulation issued under this title.
>
> (b) Whoever willfully violates, or willfully
> attempts to violate, any license, order, or
> regulation issued under this title shall, upon
> conviction, be fined not more than $50,000, or,
> if a natural person, may be imprisoned for not
> more than ten years, or both; and any officer,
> director, or agent of any corporation who
> knowingly participates in such violation may be
> punished by a like fine, imprisonment, or both.

Pub. L. No. 104-201, 110 Stat. 2422.  Subsection (b)
was amended in March 2006 to provide for a maximum
penalty of twenty years.  109 Pub. L. No. 177, 120
Stat. 243.

## B.   All Four Counts State an Offense

Hashmi first contends that all four counts of the
Indictment should be dismissed for failure to allege
essential elements of an offense under either § 2339B or
the IEEPA.  (See Hashmi Mem.[5] at 7-14.)  Specifically, he
claims that the § 2339B counts fail to state with
particularity the "material support or resources" he
allegedly provided to al Qaeda, while the IEEPA counts
similarly fail with regard to the "funds, goods, and
services" he is accused of providing.[6]

The Fifth Amendment guarantees that "No person shall
be held to answer for a capital, or otherwise infamous
crime, unless on a presentment or indictment of a Grand
Jury . . . ."  U.S. Const. amend V.  The Sixth Amendment
guarantees a defendant's right "to be informed of the
nature and cause of the accusation" against him.  U.S.
Const. amend VI.  Rule 7 of the Federal Rules of Criminal

---

[5] "Hashmi Mem." refers to the Memorandum of Law in Support
of Defendant's Motion to Dismiss the Indictment, filed
January 30, 2009.

[6] When he filed the instant motion, Hashmi also contended
that the original indictment failed to state an offense
because it did not allege that Hashmi knew al Qaeda was
specifically designated as an FTO.  The Government
subsequently filed the currently operative Indictment,
which, as Hashmi concedes, adequately alleges his knowledge
in this regard.  (Reply Memorandum of Law in Support of
Defendant's Motion to Dismiss the Indictment, filed
February 11, 2009, at 3.)

10

Procedure puts this notice requirement into effect by
instructing that an indictment "be a plain, concise, and
definite written statement of the essential facts
constituting the offense charged."  Fed. R. Crim. P. 7(c).
For an indictment to fulfill these two functions—assuring
that the defendant is tried only on matters that were
considered by the grand jury and sufficiently notifying the
defendant of the charges against him—the indictment "must
state some fact specific enough to describe a particular
criminal act, rather than a type of crime."  United States
v. Pirro, 212 F.3d 86, 93 (2d Cir. 2000) (internal
quotations and citations omitted).  Courts have
"consistently upheld indictments that do little more than
to track the language of the statute charged and state the
time and place (in approximate terms) of the alleged
crime."  Id. at 92.

        The Indictment satisfies these standards.  It charges
Hashmi with knowingly providing material support or
resources to al Qaeda; it identifies the form of material
support as "currency" and "military gear"; it specifies the
period in which the offense allegedly occurred; it names a
destination for that support, namely, South Waziristan; and
it alleges that Hashmi knew this conduct was unlawful.
Hashmi's attempt to analogize the Indictment to the one

dismissed in United States v. Awan, 459 F. Supp. 2d 167

(E.D.N.Y. 2006), is not convincing. In Awan, the

indictment alleged that the defendant had provided

"material support and resources" to be used in a conspiracy

to kidnap and/or maim persons outside the United States, in

violation of 18 U.S.C. § 2339A, but referred only to the

statute's broad definition of this term. Id. at 173

(citing indictment accusing defendant of providing and

conspiring to provide "to provide material support and

resources, as that term is defined in 18 U.S.C. § 2339A(b)

(2005)"). The Government specified in its motion papers,

rather than in the indictment, that it intended to prove

specifically that the defendant provided money and

personnel in furtherance of the conspiracy. Id. at 175.

Because the indictment referred only to the broad statutory

definition of "material support and resources," the Awan

court was left unsure whether the grand jury had considered

those particular categories of support. Id. Thus, Hashmi

argues, Awan dictates that to accuse a defendant merely of

providing "material support or resources" does not provide

adequate notice; an indictment must specify the type of

material support or resources.

The Indictment here goes beyond simply tracking

statutory language and provides the sort of particularity

12

Hashmi argues that Awan requires.  Specific types of
material support or resources that Hashmi allegedly
provided—currency and military gear—are explicitly stated
in the Indictment and thus were presented to the grand
jury.  Both currency and military gear fall within the
statutory definition of "material support or resources,"
namely, "any property, tangible or intangible."
18 U.S.C. § 2339A(b).  "Currency" is specifically listed in
the statute.  Military gear is clearly a type of tangible
property.  I further note that when the Awan indictment was
superseded by one that identified distinct categories of
support, like those already provided in the Indictment at
issue here, it was held sufficient.  United States v. Awan,
No. 06 Crim. 0154, 2006 U.S. Dist. LEXIS 81289 at *8-*10
(E.D.N.Y. Nov. 6, 2006) (citing indictment accusing
defendant of providing and conspiring to provide "material
support and resources, to wit: currency, monetary
instruments, financial services and personnel").

Moreover, in addition to providing language that goes
beyond the statute in the elements of the charge, the
Indictment provides a fairly narrow date range of
approximately two and a half years in which Hashmi's
conduct allegedly occurred.  This date range, along with
the particular items described in the Indictment, provide

13

ample notice as to what acts are at issue.  Hashmi is able
to prepare a defense based on the information provided in
the Indictment.

Hashmi also argues that the conspiracy counts fail to
state a claim because they do not identify Hashmi's alleged
co-conspirators.  But there is "no requirement that the
Indictment name co-conspirators, and courts in this
district have repeatedly denied bills of particulars
requesting such information."  United States v. Ghannam,
No. 04 Cr. 1177 (DAB), 2005 U.S. Dist. LEXIS 5385, at *3
(S.D.N.Y. Mar. 29, 2005) (collecting cases).  As stated
above, the Court finds that the Indictment is sufficient to
apprise Hashmi of the charges against him.  The Government
need not provide further detail at this stage.

Accordingly, the Court finds that the Indictment
properly states an offense.

### C.   The § 2339B Counts Are Constitutional

Hashmi next contends that the § 2339B counts should be
dismissed as unconstitutional under the First and Fifth
Amendments.  (Hashmi Mem. at 14-30.)  He argues that unless
the Court finds that § 2339B incorporates a requirement of
specific intent to further al Qaeda's aims, it violates the
Fifth Amendment's Due Process clause by imposing liability
without personal guilt.  He further asserts that, without a

14

specific intent requirement, § 2339B violates the First
Amendment, first, by infringing his right of association
and, second, for vagueness and overbreadth.  Hashmi also
argues that prosecution under the amended § 2339B violates
the Constitution's ex post facto clause.

      1.   Due Process

Hashmi contends that § 2339B violates his due process
rights.  He argues that the Government must show not only
that he provided material aid to al Qaeda, but that in
doing so he specifically intended that his assistance would
further al Qaeda's pursuits.  Absent such a specific intent
requirement, he argues, the statute criminalizes innocent
conduct and imputes guilt through association in violation
of the Fifth Amendment.  (Hashmi Mem. at 14-18.)

An individual's mere association with a group that has
both legal and illegal aims cannot serve to establish
criminal liability.  See Scales v. United States, 367 U.S.
203, 229 (1961) (A "blanket prohibition of association with
a group having both legal and illegal aims . . . [would
pose] a real danger that legitimate political expression or
association would be impaired.").  "Personal guilt," i.e.,
"concrete personal involvement in criminal conduct," id. at
220, must always exist, and therefore a statute that
prohibits association with a group having both legal and

illegal aims must require proof that the defendant specifically intended to further the group's illegal aims.

Section 2339B does not run afoul of these precepts. It criminalizes conduct, namely the provision of material support to a known FTO, rather than mere association with such a group. Accordingly, the "personal guilt" standard upon which Hashmi relies, articulated in Scales, is satisfied.

Scales involved a statute that criminalized association with a group that espoused illegal behavior, and its analysis of "personal guilt" is only relevant when the "government seeks to impose liability on the basis of association alone . . . or because a person espouses the views of an organization that engages in illegal activities. Conduct giving rise to liability under section 2339B, of course, does not implicate associational or speech rights." Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1026 (7th Cir. 2002) (internal citations omitted). Section 2339B criminalizes the conduct of intentionally providing support to a group known by the defendant to be unlawful—what the Scales court referred to as "concrete personal involvement in criminal conduct." Scales, 367 U.S. at 220. Rather than penalizing mere association with a group with illegal aims, the statute criminalizes a

16

"relationship . . . sufficiently substantial to satisfy the concept of personal guilt."  Id. at 225.

It is thus no surprise that every court save one to have addressed Hashmi's "personal guilt" argument has rejected it.[7]  Indeed, as this Court explained in United States v. Sabir, No. 05 Crim. 673, 2007 U.S. Dist. LEXIS 34372 at *32-*33 (S.D.N.Y. May 9, 2007), § 2339B plainly excludes any requirement of specific intent to further the activity of an FTO.  In enacting § 2339B, Congress intended to prohibit the provision of support to FTOs on the "fullest possible basis, consistent with the Constitution."

---

[7] See, e.g., United States v. Warsame, 537 F. Supp. 2d 1005, 1021 (D. Minn. 2008) ("§ 2339B requires that the prosecution show a [defendant's] 'concrete, personal involvement in criminal conduct,' rather than his mere association with it.") (citations omitted); United States v. Uzair Paracha, No. 03 Cr. 1197, 2006 U.S. Dist. LEXIS 1 at *87 (S.D.N.Y. Jan. 3, 2006) ("This Court agrees that the statute's focus on conduct rather than association or membership . . . is sufficient to satisfy the due process requirement of personal guilt."); United States v. Al Kassar, 582 F. Supp. 2d 488, 498 (S.D.N.Y. 2008) ("[B]ecause Section 2339B does not criminalize guilt by association, Scales and its 'personal guilt' standard are not implicated.").  The outlier is United States v. Al-Arian, 329 F. Supp. 2d 1294 (M.D. Fla. 2004), which held § 2339B unconstitutional without a specific intent requirement.  But that decision was delivered before the IRTPA added the scienter requirement.  Therefore, al-Arian's analysis is no longer applicable:  Congress's amendment has superseded (and implicitly rejected) the al-Arian court's construction.  See, e.g., United States v. Ihsan Elashyi, 554 F.3d 480, 505 (5th Cir. 2008) (holding that al-Arian's inference of a specific intent requirement would "effectively rewrite the statute").

17

AEDPA, Pub. L. No. 104-132, § 301(b), 110 Stat. 1274
(1994). To this end Congress provided the following mens
rea requirement in its December 2004 amendment: "To violate
this paragraph, a person must have knowledge that the
organization is a designated terrorist organization . . .,
that the organization has engaged or engages in terrorist
activity . . . , or that the organization has engaged or
engages in terrorism." 18 U.S.C. § 2339B(a)(1).

The statute does not require that, in providing
material support to an FTO, a contributor must specifically
intend to further its goals. Nor is it constitutionally
required to do so. It is enough that Hashmi is alleged to
have provided material resources to a group that he knew
was designated as an FTO or that he knew had engaged in
terrorism. See United States v. Aref, 2007 U.S. Dist.
LEXIS 12228, at *77 (N.D.N.Y. Feb. 22, 2007) (rejecting
defendant's post-trial motions for a judgment of acquittal
or a new trial and stating: "whether [defendant] agreed
with the goals of the [FTOs] is not the issue, but instead
whether he knowingly and intentionally provided material
support or resources to a group he knew was a foreign
terrorist organization"), aff'd, 285 Fed. Appx. 784
(2d Cir. 2008). Here, Hashmi is not charged simply with
associating with an FTO or even expressing explicit support

for its goals.  He is charged with knowingly providing an

FTO with currency and military gear.  These allegations are

sufficient to satisfy the Fifth Amendment's due process

requirements.  See Uzair Paracha, 2006 U.S. Dist. LEXIS 1,

at *95 (requiring that jury be instructed on scienter

requirement to satisfy due process).

### 2.    Vagueness Challenge

Hashmi next argues that § 2339B's definition of

"material support or resources" is unconstitutionally

vague.  (Hashmi Mem. at 24-28.)  The "void for vagueness"

doctrine, grounded in the Due Process Clause, "requires

that a penal statute define the criminal offense with

sufficient definiteness that ordinary people can understand

what conduct is prohibited and in a manner that does not

encourage arbitrary and discriminatory enforcement."

Kolender v. Lawson, 461 U.S. 352, 357 (1983) (citations

omitted).  A statute may be vague either as applied to the

conduct at issue or on its face.  Hashmi contends that

§ 2339B is vague in both respects.  In such cases, the as-

applied challenges should be considered first.  "Because

the permissibility of a facial challenge sometimes depends

upon whether the challenged regulation was constitutional

as applied to the plaintiff, '[a] court should . . .

examine the complainant's conduct before analyzing other

hypothetical applications of the law.'"  Farrell v. Burke,
449 F.3d 470, 485 (2d Cir. 2006) (citing Village of Hoffman
Estates v. Flipside, 455 U.S. 489, 495 (1982)).  I
therefore first consider Hashmi's as-applied challenge.

        a.   As Applied

To decide as-applied vagueness challenges a court must
(1) determine whether the statute gives a person of
ordinary intelligence a reasonable opportunity to know what
is prohibited and (2) consider whether the law provides
explicit standards for those who apply it.  United States
v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993).

Counts One and Two charge Hashmi with the provision of
"material support or resources," including "currency" and
"military gear."  "Material support or resources" is
defined as "property, tangible or intangible, or service,
including currency and other physical assets . . . ."
18 U.S.C. § 2339A(b)(1).  The statute clearly gives a
person of ordinary intelligence a reasonable opportunity to
know what is prohibited and provides explicit standards to
enforce violations.  See Nadi, 996 F.2d at 550.  As
discussed in Part I(B), "currency" and "military gear" fall
within the statutory definition.  In this Indictment,
therefore, the term "material support or resources" is not
vague.  Nor is the act of "providing" it.

To support his as-applied challenge, Hashmi presents a proffer as to what the Government's allegations include based on discovery to date, namely, that the Government intends to prove that Hashmi's unlawful conduct consisted, at least in part, of allowing a confederate to transport his own luggage containing waterproof socks, ponchos, and raincoats.  (Hashmi Mem. at 28-29; Tr.[8] at 5:9-13, 14:15-18.)  He argues that these materials could not "be construed as 'material' support or resources for a terrorist organization."  (Hashmi Mem. at 28.)  Hashmi's argument ignores the fact that Congress defined "material support or resources" within the statutory framework, and to the extent Hashmi seeks to create a de minimis exception for material that he deems without "readily apparent dangerous, nefarious, or terroristic quality," (Hashmi Mem. at 28), his argument is without merit.

The Court is similarly unpersuaded by Hashmi's contention that the term "military gear" itself is so vague that an ordinary person would not have notice that such items could be prohibited under the statute.  (Hashmi Mem. at 8-11.)  "Military gear," to any reasonable person of ordinary intelligence, consists of tangible property that

_____

[8] "Tr." refers to the transcript of the oral argument held on February 17, 2009.

21

can clothe and/or equip fighters. That is enough to
violate the statute.

Section 2339B also provides an explicit standard for
enforcement. As this Court has previously noted, "[t]he
level of detail in § 2339B and its defined terms also
precludes the conclusion that the Government will enforce
the statute arbitrarily or discriminatorily." United
States v. Shah, 474 F. Supp. 2d 492, 500 (S.D.N.Y. 2007).
Accordingly, as applied to the charges against Hashmi,
§ 2339B is not unconstitutionally vague.[9]

b.    On Its Face

In analyzing a facial vagueness challenge, courts
generally uphold a statute unless it is "impermissibly
vague in all of its applications." Hoffman Estates, 455
U.S. at 495. If the statute implicates constitutional
rights, as Hashmi claims is the case here, a court must
determine whether the challenged statute "reaches a
substantial amount of constitutionally protected conduct."
Kolender, 461 U.S. at 358 n.8 (citations omitted).

Hashmi has not shown that § 2339B reaches a
substantial amount of constitutionally protected conduct,

---

[9] The Court notes that Hashmi does not argue that the term
"currency" is vague.

if any.[10]   Hashmi proposes a hypothetical whereby "providing

infant formula to refugees somehow affiliated with an FTO

would result in potentially decades of imprisonment."

(Hashmi Mem. at 29.)   Section 2339B prohibits the provision

of material support or resources to an FTO; "refugees," in

this hypothetical, are not an "organization," and Hashmi

does not postulate any connection between these refugees

and an FTO.   Even so, providing infant formula would not be

constitutionally protected if, say, it were supplied to a

terrorist group that distributed the formula in order to

gain popular appeal; this would free up resources the group

could then use in more violent expenditures.   On the other

hand, assuming without deciding that providing infant

formula to refugees were found to be constitutionally

protected conduct, this hardly establishes that the law

reaches a substantial amount of such conduct.   In any

event, this hypothetical cannot establish that the law

reaches a substantial amount of constitutionally protected

conduct.   Section 2339B is thus not facially vague.[11]

---

[10] Other courts to consider a facial challenge to § 2339B
have also rejected it.   See, e.g., Warsame, 537 F.Supp. 2d
at 1020; United States v. Marzook, 383 F. Supp. 2d 1056,
1066 (N.D. Ill. 2005); United States v. Taleb-Jedi,
566 F. Supp. 2d 157, 183-84 (E.D.N.Y. 2008).

[11] Any residual vagueness as to the scope of § 2339B was
(continued on next page)

23

### 3. First Amendment

#### a. Free association

Hashmi next contends that § 2339B violates his First Amendment rights by making "blanket prohibitions against making financial and material contributions to legal humanitarian and political activities of designated FTOs," including the "freedom to advocate the use of force or violation of the law." (Hashmi Mem. at 19.) The First Amendment commands that "Congress shall make no law . . . abridging freedom of speech." U.S. Const. amend. I., cl. 1. This edict, along with the Amendment's protections of free exercise, assembly, and petition, implies a "right to associate for the purpose of engaging in those activities protected by the First Amendment." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984).

The existence of a right to associate does not bar the enactment of laws that regulate "nonexpressive activity," such as the conduct at issue here. See Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986). In Arcara, an anti-

(continued)
further "ameliorated" by Congress's December 2004 incorporation of a specific mens rea requirement in § 2339B(a)(1). Hill v. Colorado, 530 U.S. 703, 732 (2000); see also Hoffman Estates, 455 U.S. at 499 ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

prostitution ordinance led to an action seeking closure of
a bookstore that had been the scene of illegal lewdness.
Id. at 699.  The New York Court of Appeals reasoned that
the statute, though promulgated as a valid exercise of the
state's police power, nonetheless triggered First Amendment
scrutiny because of its incidental effect on the
bookstore's ability to operate, and by extension to
exercise its right of free expression.  Id. at 701.  The
Supreme Court reversed and held that the legislation was
aimed at unlawful conduct (prostitution) that had nothing
to do with free speech or expressive conduct.  Id. at 707.
When "'nonspeech' conduct subject to a general regulation
bears absolutely no connection to any expressive activity,"
the First Amendment is not implicated.  Id.

Here, the crime of providing material support or
resources to al Qaeda is no more "expressive" than the
crime of prostitution, and Hashmi makes no attempt to
explain how the conduct for which is he charged was a form
of expression protected by the First Amendment.

Even assuming the provision of material support to a
designated terrorist organization could implicate First
Amendment rights, Congress has the power to regulate
expressive conduct so long as it satisfies an
"intermediate" level of constitutional scrutiny.  Courts

25

apply intermediate scrutiny when the regulation at issue is "content-neutral," i.e., not promulgated "because of disagreement with the message it conveys" but to "[serve] purposes unrelated to the content of expression." Ward v. Rock against Racism, 491 U.S. 781, 791 (1989) (internal citations and quotations omitted).[12]  The standard is set out in United States v. O'Brien, 391 U.S. 367 (1968), which held that a statute is constitutional if: (1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. Id. at 377.

Section 2339B satisfies the O'Brien test. First, it is clearly within the federal government's constitutional

---

[12] Hashmi's argument that strict scrutiny is required is without merit and relies on inapposite authority concerning direct regulation of speech. Bullfrog Films, Inc. v. Wick, 847 F.2d 502 (9th Cir. 1988) (United States Information Agency content-related regulations infringed on filmmakers' First Amendment rights); R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) (Minnesota law against displaying a symbol that "arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender" violated First Amendment); and Boos v. Barry, 485 U.S. 312 (1988) (D.C. law against displays near embassies was content-based restriction on political speech in a public forum).  Here, however, the Court is considering a law that at most incidentally encroaches on expressive conduct.

power to regulate interactions between citizens and foreign entities.  See, e.g., Teague v. Regional Comm'r of Customs, 404 F.2d 441, 445 (2d Cir. 1968) (upholding regulations "designed to limit the flow of currency to specified hostile nations" even though the regulations "impinged on First Amendment freedoms").  Second, it is beyond cavil that the government has a substantial interest in protecting citizens by choking aid to foreign terrorists. Third, this interest is designed to protect United States citizens from bodily harm rather than suppress free expression.  One may cheer al Qaeda but one may not act to strengthen it with material support.  Fourth, any incidental effect § 2339B may have on expression is no greater than necessary.  Congress, in enacting the measure, incorporated the finding that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."  AEDPA § 301(a)(7). As the Ninth Circuit explained, this finding means that "all material support given to [foreign terrorist] organizations aids their unlawful goals . . . .  [W]hen someone makes a donation to them, there is no way to tell how the donation is used . . . .  [M]oney is fungible; giving support intended to aid an organization's peaceful

activities frees up resources that can be used for

terrorist acts." Humanitarian Law Project, 205 F.3d at

1136 (footnote omitted).  Section 2339B, whatever its

incidental effect on speech, is properly fitted to the

crucial interest served.

Hashmi rightly observes that the First Amendment

protects the "freedom to associate with others for the

common advancement of political beliefs and ideas."

Buckley v. Valeo, 424 U.S. 1, 15 (1976) (internal

quotations and citations omitted).  But Hashmi does not

stand accused of merely espousing the beliefs of al Qaeda;

he stands accused of providing the group with material

support and resources.  The facilitation of terrorism is

not protected by the First Amendment.  Section 2339B

prohibits the provision of material aid to FTOs like al

Qaeda, not any expression, association, or advocacy on

their behalf.  The District of Columbia, Seventh, and Ninth

Circuits have held accordingly.  See People's Mojahedin

Org. of Iran v. Dept. of State, 327 F.3d 1238, 1244 (D.C.

Cir. 2003) ("It is conduct and not communication that the

statute controls"); Boim v. Quranic Literacy Inst.,

291 F.3d 1000, 1026 (7th Cir. 2002) ("Section 2339B

prohibits only the provision of material support (as that

term is defined) to a terrorist organization.  There is no

constitutional right to provide weapons and explosives to
terrorists, nor is there any right to provide the resources
with which the terrorists can purchase weapons and
explosives"); Humanitarian Law Project, 205 F.3d at 1135
(9th Cir. 2000) ("[T]he material support restriction . . .
is not aimed at interfering with the expressive component
of [an individual's] conduct but at stopping aid to
terrorist groups").

Hashmi cites American-Arab Anti-Discrimination
Committee v. Reno, 70 F.3d 1045 (9th Cir. 1995), which held
that "[j]oining organizations that participate in public
debate, making contributions to them, and attending their
meetings are activities that enjoy substantial First
Amendment protection." Id. at 1058. But as the Ninth
Circuit has also emphasized, "advocacy is far different
from making donations of material support." Humanitarian
Law Project, 205 F.3d at 1134; see also Boim, 291 F.3d at
1026 ("[D]onations are not always equivalent to advocacy
and are subject to greater government regulation."").
Likewise, Brandenburg v. Ohio, 395 U.S. 444 (1969), cited
by Hashmi, gains him no traction; that case involved
advocacy of illegal action, not actual illegal action or
even any material support of illegal action. Accordingly,

the Indictment may not be dismissed as a prohibited

interference with Hashmi's right of free association.

b.    Overbreadth Challenge

Hashmi contends that by interfering with "otherwise

protected political, religious and associational activity,"

§ 2339B violates the First Amendment's overbreadth

doctrine. (Hashmi Mem. at 28-30.) A statute is overbroad

if it "punishes a substantial amount of protected free

speech, judged in relation to the statute's plainly

legitimate sweep." Virginia v. Hicks, 539 U.S. 113, 118-19

(2003) (internal quotations and citations omitted). The

defendant's burden in establishing overbreadth is great;

the doctrine is employed by courts "with hesitation, and

then only as a last resort." Los Angeles Police Dep't v.

United Reporting Publ'g Corp., 528 U.S. 32, 39 (1999)

(internal citations and quotations omitted). This

hesitation is greatest when analyzing laws not specifically

addressed to speech or speech-related conduct, like

picketing or demonstrating. Hicks, 539 U.S. at 124 (noting

that in such cases, "[r]arely, if ever, will an overbreadth

challenge succeed").

The analysis for Hashmi's overbreadth challenge is

essentially the same as a facial challenge for vagueness.

See Farrell, 449 F.3d at 499. Hashmi does not meet his

30

burden.  His lone hypothetical about infant formula, discussed in Part I(C)(2)(b) supra, cannot serve to invalidate the entire statute.  Even the most persuasive hypotheticals do not require a court to strike down a law as overbroad if they do not show that the overbreadth is substantial in relation to its legitimate reach.  United States v. Assi, 414 F. Supp. 2d 707, 724 (E.D. Mi. 2006). As discussed in Part I(C)(3)(a) supra, § 2339B prohibits conduct, not "associational activity" and survives intermediate scrutiny.  Even if it were shown that the law affects some activity that otherwise receives First Amendment protection, Hashmi does not show that these potential interferences are substantial in view of the law's legitimate purpose.  See United States v. Hammoud, 381 F.3d 316, 330 (4th Cir. 2004) (holding that even if § 2339B encompasses some protected activity, defendant "utterly failed" to demonstrate overbreadth).  Accordingly, Hashmi's motion to dismiss the Indictment on overbreadth grounds is denied.

### 4.    Ex Post Facto Challenge

Hashmi contends that prosecution under § 2339B for conduct prior to the 2004 addition of the mens rea requirement is tantamount to enacting an ex post facto law. (Hashmi Mem. at 22-24.)  The Constitution's Ex Post Facto

Clause bars Congress from passing laws to punish conduct that was legal when committed or that increase a criminal penalty after the crime has been committed.  U.S. Const. art. I, § 9, cl. 3.  Clarifying amendments, however, are applied retroactively and do not violate the Ex Post Facto clause.  United States v. Mapp, 990 F.2d 58, 61 (2d Cir. 1993) ("When an amendment serves merely to clarify and does not enhance punishment, the Ex Post Facto Clause is not implicated").  Section 2339B was enacted in 1996.  Since then it has outlawed the provision of material resources to FTOs.  Indeed, the IRTPA's scienter addition served to limit, rather than expand, the scope of the criminality. Hashmi's conduct, as alleged, would always have rendered him chargeable under statute, on every count and for all times asserted.  Accordingly, Hashmi's motion to dismiss the indictment on ex post facto grounds is denied.

### D.   **The IEEPA Counts Are Constitutional**

#### 1.   The IEEPA is Not An Unconstitutional Delegation

Defendant claims that the IEEPA constitutes an improper delegation of legislative authority to the President in violation of the separation of powers doctrine and Article I §§ 1, 7, and 8 of the Constitution.  (Hashmi Mem. at 30-33.)  The Court of Appeals, however, has already

upheld the IEEPA as a constitutional delegation of power. United States v. Dhafir, 461 F.3d 211 (2d Cir. 2006). The Dhafir court compared the IEEPA to a portion of Controlled Substances Act, 21 U.S.C.S. § 811(h), which, as here, concerned executive designation of criminal offenses. The court found that the IEEPA "'meaningfully constrains the [President's] discretion,' by requiring that '[t]he authorities granted to the President . . . may only be exercised with respect to which a national emergency has been declared.'" Id. at 217 (quoting Touby v. United States, 500 U.S. 160, 166 (1991), and citing 50 U.S.C. § 1701(b)). In further support of the IEEPA's constitutionality, the Dhafir court observed that the delegated powers are "defined and limited"; that the IEEPA requires "periodic re-affirmation of necessity and is conditioned on reporting to Congress"; that the IEEPA "relates to foreign affairs—an area in which the President has greater discretion"; and that Congress has "endorsed the President's actions and enacted legislation codifying the sanctions." Id. at 217. Accordingly, this Court denies Hashmi's invitation to ignore this Circuit's law and declare the IEEPA an unconstitutional delegation.

33

### 2.   The IEEPA Is Not Unconstitutionally Vague

Hashmi's final argument is that the IEEPA is unconstitutionally vague. He contends that there is no "meaningful distinction" in the language triggering its civil penalty, imposed when one "violates" the statute, and its criminal penalty, imposed when one "willfully violates" the statute. (Hashmi Mem. at 34.) As a result, he claims, due process is breached because an individual in Hashmi's position is unable to apprehend (from the term "willfully") what conduct "will be treated as a criminal transgression versus a civil infraction." (Id. at 34.)

The Supreme Court, in Bryan v. United States, 524 U.S. 184 (1998), discussed the use of the term "willfully" in criminal statutes and explained that

> [m]ost obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. . . . As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'

Id. at 191-92 (internal citations and footnotes omitted). The Court of Appeals has already applied this standard to the IEEPA. See United States v. Homa Int'l Trading Corp., 387 F.3d 144, 147 (2d Cir. 2004). Thus, the Indictment

need not allege, as Hashmi contends, that he "knew about the executive orders that he is charged with willfully violating." (Hashmi Mem. at 35). It is enough if Hashmi acted with the knowledge that his conduct was unlawful. Accordingly, the IEEPA counts are not unconstitutionally vague.

## II.   BILL OF PARTICULARS

Hashmi moves separately for a bill of particulars, claiming he is "unable to ascertain adequately from the face of the Indictment the nature of the case against him in order to prepare his defense and avoid surprise at trial." (Hashmi Motion for a Bill of Particulars, filed January 8, 2009.)   A bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."   United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2008) (citation and quotation omitted).   For the same reasons that the vagueness challenge is denied, the Court finds that the allegations of providing material support or resources—specifically, "currency" and "military gear"—are sufficient to apprise Hashmi of the specific acts of which he is accused.

In addition, Hashmi ignores the clear rule that a defendant's notice of the specific acts for which he was charged must be evaluated in light of all the information he has received from the Government.[13]  See, e.g., United States v. Barnes, 158 F.3ed 662, 665-66 (2d Cir. 1997). Hashmi's counsel acknowledged at oral argument that he was aware that "military gear" comprised raincoats, ponchos, and waterproof socks based on the discovery to date. (See Tr. at 5.)  Moreover, the Government asserts, and Hashmi does not deny, that it has provided additional discovery in the form of "photographs and other information related to Hashmi's residence where the military gear was allegedly stored, telephone records, and bank records." The additional information provided by the Government obviates any argument that the Government has not provided information sufficient to advise Hashmi of the specific acts of which he is accused.  Accordingly, the motion for a bill of particulars is denied.

---

[13] As the Government notes in its opposition, Hashmi's motion for a bill of particulars is also procedurally deficient because it fails to comply with Local Rule 16.1, which requires an affidavit certifying that counsel for the parties have conferred in an effort to resolve by agreement the issues raised by the motion.  See L.R. 16.1.

**CONCLUSION**

For the reasons set out above, Hashmi's motion to dismiss the Indictment (dkt. no. 62) is DENIED.  Hashmi's motion for a Bill of Particulars (dkt. no. 65) is DENIED.


SO ORDERED.

Dated:  New York, New York
November **17**, 2009

LORETTA A. PRESKA,
CHIEF U.S.D.J.